# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 91 CR 163 | **DATE** | 12/23/2002 |
| **CASE TITLE** | USA vs. Hinshaw | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendant's motion to disclose all information and evidence [#148] is denied without prejudice. To the extent the motion has not been resolved by agreement, it does not set forth compliance with Local Criminal Rule 12.1(b)(1)-(4). Enter Memorandum Opinion and Order. The motion of the United States to admit certain evidence pursuant to Rule 404(b) [#153] is denied. Case will proceed to trial on March 3, 2003.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 2 number of notices | Document Number |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | DEC 2 4 2002 date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | 155 |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 12/23/2002 date mailed notice | |
| MD | courtroom deputy's initials | 02 DEC 23 PM 4:36 FILED-DATED | MD mailing deputy initials | |
| | | Date/time received in central Clerk's Office | | |

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) <br> ) <br> vs. ) <br> ) <br> CHARLES ARTHUR HINSHAW, also known ) <br> as "Charles Lee Hamilton" and "Ron Arthur ) <br> Taylor," ) <br> ) <br> Defendant. ) <br> ) | No. 91 CR 0163 <br> Judge Joan H. Lefkow <br><br> DOCKETED <br> DEC 24 2002 |

## MEMORANDUM OPINION AND ORDER

Defendant, Charles Arthur Hinshaw ("Hinshaw"), has been indicted on charges of conspiracy to possess phencyclidine ("PCP") with intent to distribute (Count I); knowingly and intentionally possessing PCP with intent to distribute (Count II); assaulting a Drug Enforcement Administration ("DEA") agent (Count III); and failing to appear for trial (Count IV). The United States of America ("United States") has moved to admit under Rule 404(b), Fed. R. Evid., evidence concerning Hinshaw's 1997 possession of 13 gallons of PCP and his conviction arising from such conduct. For the reasons set forth below, the motion is denied.

## BACKGROUND

On March 4, 1991, the United States alleges that law enforcement agents ("agents"), acting on a tip from an informant, learned that someone named "Charles" or "Chuck" would be coming to the vicinity of 853 N. Central Park Avenue in Chicago from Cleveland, Ohio. The agents were told that "Charles" or "Chuck" would be traveling by automobile with another man and had PCP to distribute. The United States expects Roby Jenkins, who lived at 853 N. Central Park, to testify that on March 4, 1991, two men known to her only as ("Chucky") (who the

155

United States alleges is in fact Hinshaw) and "Derrick" arrived at her residence. While Chucky and Derrick where at the house, a man named George Roberts arrived and spoke with Chucky and Derrick about buying PCP. During this interchange, Chucky produced two 32-ounce Listerine bottles filled with liquid PCP for sampling. Roberts at this time informed Chucky that he was not interested in buying the PCP, and Chucky asked if he knew of others who would be interested, to which Roberts responded that he did not.

When the agents arrived at the 853 N. Central Park residence, they observed Hinshaw leave with an unidentified woman. After walking out of the agents' sight, Hinshaw returned alone and sat in the passenger seat of a parked car with Ohio licence plates located immediately in front of 853 N. Central Park. After observing the unidentified woman approach the car and later walk away, the agents went to the car and identified themselves. Hinshaw jumped out of the car and fled through an alleyway as the agents pursued him. During the chase, Hinshaw allegedly was confronted by DEA Special Agent Anthony Ryan, who Hinshaw is alleged to have assaulted. Hinshaw was finally placed under arrest as he tried to further escape. When the agents returned to the parked car in which Hinshaw had been seated, they found two pieces of luggage in the trunk which together contained five 32-ounce Listerine bottles filled with what the DEA laboratory subsequently determined to be 5.1 liters (4.1 kilograms) of liquid PCP.

At the time of his arrest and in subsequent court appearances, Hinshaw identified himself as "Charles Hamilton." Under that alias, Hinshaw obtained release on bond, and an indictment was returned against "Charles Hamilton." After the pretrial proceedings, trial was set for June 8, 1992 before the Honorable John Nordberg, to whom this case was then assigned. On May 28, 1992, Judge Nordberg granted the United States' motion for a bench warrant for the arrest of

"Hamilton," but stayed entry of the order under June 3, 1992. The stay was lifted on the bench warrant on June 3 and at the request of defense counsel the trial date was postponed until June 23, 1992. Hinshaw failed to appear for trial, and remained a fugitive in this case until his arrest in California on October 25, 2001.

On September 30, 1997, Hinshaw, still a fugitive at law, and a female companion were stopped for speeding in Sherman County, Kansas while traveling in a pick-up truck. Hinshaw, who was driving, stated that he was on his way to Cleveland, Ohio. Hinshaw gave the name "Clyde A. Dawson." A consent search of the pick-up truck for narcotics revealed that one of the vehicle's two gas tanks contained approximately 13 gallons of PCP.

An FBI comparison of "Dawson's" fingerprint records matched those of a man who in previous encounters with police used the name "Ron Arthur Taylor." Through error, however, the FBI had not associated the fingerprints of Hamilton (who was, in fact, Hinshaw) with "Taylor" or Hinshaw's other aliases.

Hinshaw was indicted by a federal grand jury in Wichita, Kansas for conspiring to possess, and possessing, PCP with intent to distribute. Hinshaw appeared in court in that case using the name "Ron Arthur Taylor." On April 30, 1998, Hinshaw appeared before the district judge and pled guilty to a superseding information alleging a violation of 18 U.S.C. § 1952 (interstate travel in aid of racketeering). At this time, Hinshaw's attorney advised the court that his client's name was "Charles Arthur Henshaw." On July 24, 1998, Hinshaw was sentenced to five years imprisonment. Only after Hinshaw's release from prison was his identity as "Charles Hamilton" detected.

## DISCUSSION

The United States has moved, pursuant to Rule 404(b), Fed. R. Evid., to admit evidence concerning Hinshaw's possession of 13 gallons of liquid PCP, and his conviction arising from that conduct. Under Rule 404(b), evidence of prior convictions or other misconduct is not admissible to show a defendant's propensity to commit crime or that a defendant acted in conformity with that propensity in the incident in question. *United States* v. *Best*, 250 F.3d 1084, 1090 (7th Cir. 2001); *United States* v. *Wash*, 231 F.3d 366, 370 (7th Cir. 2000); *United States* v. *Lewis*, 110 F.3d 417, 419 (7th Cir. 1997). Instead, such evidence is admissible only for "other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge or identity." *Best*, 250 F.3d at 1090, citing *Wash*, 231 F.3d at 370. Courts in this circuit employ a four-part test in determining admissibility of such evidence:

> (1) the evidence [must be] directed toward a matter in issue other than the defendant's propensity to commit the crime charged; (2) the evidence [must] show[] that the other act is similar enough and close enough in time to be relevant to the matter in issue; (3) the evidence [must be] sufficient to support a jury finding that the defendant committed the similar act; and (4) the probative value of the evidence [must] not [be] substantially outweighed by the danger of unfair prejudice.

*Best*, 250 F.3d at 1090, citing *United States* v. *Williams*, 238 F.3d 871, 874 (7th Cir. 2001).

In addressing the first factor, the United States maintains that the evidence of the 1997 incident goes toward Hinshaw's intent to distribute PCP, knowledge of the narcotics possessed, or opportunity and contacts to obtain narcotics. With respect to the issue of intent, according to the United States, Counts I and II of the superseding indictment (conspiracy to possess narcotics with intent to distribute, and possession of narcotics with intent to distribute) are both specific

4

intent crimes, *e.g.*, *Best*, 250 F.3d at 1091, *Lewis*, 110 F.3d at 420, and, therefore, Hinshaw's intent is automatically in issue. In *Best*, the court held:

> [t]herefore, in this case, the government was entitled to present evidence of prior acts relevant and probative of Best's intent to commit the charged crimes. For example, to prove that Best intended to distribute the crack he possessed, the government could introduce evidence of Best's prior acts of drug trafficking, *see United States v. Allison*, 120 F.2d 71, 74-75 (7th Cir. 1997), or of his previous possession of distribution amounts of cocaine, *see Wash*, 231 F.3d at 370-71, provided that such evidence satisfies other conditions of admissibility.

*Best*, 250 F.3d at 1091.

Hinshaw, in response, argues that due to the amount of PCP involved in this case (5.1 liters), intent cannot really be an issue, as this amount of PCP could never be argued to be possessed for anything other than distribution. Hinshaw, apparently focusing on challenging the possession of the PCP in this case, contends that to allow the use of the subsequent arrest and conviction would not be for intent but instead would be simply for allowing the jury to hear evidence to show Hinshaw's propensity to commit the crime.

This argument, however, has been expressly rejected. Regardless of what Hinshaw does or does not plan to dispute at trial, the burden remains on the United States to prove each element of the crimes charged, "even those that the defendant does not specifically contest . . . ." *United States v. Jones*, 248 F.3d 671, 675 (7th Cir. 2001). In *Jones*, the defendant was convicted for possession with the intent to distribute various controlled substances. *Id.* at 674. On appeal, Jones argued that the trial court's admission of evidence of Jones's prior drug dealing was in error because he only denied possession of the drugs and, therefore, intent was irrelevant. *Id.* at 675. The Seventh Circuit rejected this argument, concluding that "[e]ven though Jones focused only on the first element of the alleged crime, denying that he possessed the drugs . . . , the

5

government was still required to prove both his knowledge that the substances were narcotics and his intent to distribute by submitting evidence on those issues." *Id.* The court went on to conclude that the prior drug dealings were relevant to Jones's knowledge and were properly admitted under Rule 404(b). *Id.* Thus, based on *Jones*, the 1997 possession and conviction is not barred under Rule 404(b) simply because Hinshaw does not challenge intent.

Hinshaw more persuasively argues, however, that because the 1997 conviction took place *after* the initial incident in 1991, it is a subsequent bad act that does not relate to or prove anything that happened previously. In support, Hinshaw relies on *United States v. Betts*, 16 F.3d 748 (7th Cir. 1994) *abrogated on other grounds by United States v. Mills*, 122 F.3d 346 (7th Cir. 1997), where the court stated "[s]ubsequent narcotics activity . . . particularly conduct that is substantially separated in time from the charged offense, is far less likely to illuminate the defendant's state of mind on an earlier occasion." *Id.* at 758 (citations omitted). The Seventh Circuit, however, recently readdressed this issue and retreated somewhat from the strong language in *Betts*, noting

> that "simply because evidence of a prior act is admissible under Rule 404(b) for a particular purpose does not mean that a similar but subsequent act is necessarily inadmissible for the same purpose." [*Betts*] at 757. [Defendant] attempts to turn this language into a fifth prong to the established test. The language in *Betts* does not, however, support this argument. To say that evidence of a subsequent act is not necessarily admissible where evidence of a prior act was admissible is not to say that evidence of a subsequent act is never admissible. This is clear from our language in Betts:
>> Rule 404(b), of course, does not restrict evidence concerning the defendant's "other acts" to events which took place before the alleged crime; by its very terms, 404(b) does not distinguish between "prior" and "subsequent" acts. The critical question is whether the evidence is sufficiently probative of a matter within the rule's purview. Depending on the factual circumstances, the chronological relationship of the charged offense and the other act

> may well have some bearing on this inquiry, but it is not
> necessarily dispositive.

*Id.* at 757 (citations and internal quotations omitted). The appropriate analysis is the well-established four-prong test. The timing of the act is only relevant inasmuch as it affects considerations inherent in that test.

*United States v. Anifowoshe*, 307 F.3d 643, 646-47 (7th Cir. 2002).

Thus, as the court made clear in both *Anifowoshe* and *Betts*, the end result in a Rule 404(b) inquiry is based more on the factual circumstances and not on any hard and fast rules automatically barring subsequent convictions without analysis. The question then becomes whether after applying the factors, is the factual scenario before the court more similar to that in *Betts* or in *Anifowoshe*.

In *Betts*, the defendants challenged the discovery of additional marijuana eighteen to twenty-four months after the conspiracy with which defendants were charged had ended. *Betts*, 16 F.3d at 750. In addressing the admissibility under 404(b) of the marijuana discovered after the conspiracy had ended, the court concluded that "[h]ow and why [the defendants] came to possess the . . . [marijuana] . . . at the time of their arrest is unexplained, although it certainly suggests that they may have continued or resumed marijuana distribution through other channels. But it offers no insight into what [the defendants'] knowledge and intent was years earlier." *Id.* at 758.

By contrast, in *Anifowoshe*, the court affirmed the district court's ruling that proof of a subsequent fraud scheme "virtually identical" to the one charged in the instant case was admissible under 404(b). 307 F.3d at 644-48. The court characterized the length of time between the two incidents as "nothing more than a few months." *Id.* at 647. The court

7

concluded that "[g]iven these similarities the evidence was admissible to establish *modus operandi*[1] for the purpose of proving identity." *Id.*

While the United States brushes aside any distinction between the allowance of the testimony in *Anifowoshe* and the facts present here, the court is not so easily persuaded. It is clear that the subsequent actions in *Anifowoshe* were admitted for a purpose other than to show propensity to commit the crime, *i.e.*, that the same person committed both crimes with a distinctive method of operation. The court does not believe it to be clear, however, that Hinshaw's possession and conviction can illustrate intent, knowledge or opportunity at an incident preceding it six years in time where the factual similarities between the incidents (same drug in large quantities, method of travel with a passenger) are indistinguishable from the typical scenario for a crime of this sort. In short, this court does not believe, based on the fact present here, that the subsequent act shows Hinshaw's intent, knowledge or opportunity at a prior date.

Without any clear indication of how the 1997 possession and conviction goes to Hinshaw's intent, knowledge or opportunity, it is nothing more than a "poorly disguised propensity argument, and that is exactly what Rule 404(b) prohibits." *Betts*, 16 F.3d at 759. In finding that the evidence is not directed toward a matter other than Hinshaw's propensity to commit the crime charged, the court does not address the other three factors and denies the motion.

---

[1] *Modus operandi* is "evidence that shows a defendant's distinctive method of operation." *United States* v. *Robinson*, 161 F.3d 463, 467 (7th Cir. 1998).

## CONCLUSION

For the reasons stated above, the court denies the United States' motion to admit certain evidence pursuant to Rule 404(b) [#153]. This case is set for trial on March 3, 2002

ENTER: /s/ Joan H. Lefkow
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: December 23, 2002